IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Richard Allen Patterson,<br>    Plaintiff, | )<br>)<br>) |
| v. | )     1:20cv202 (AJT/MSN) |
| William C. Smith, et al.,<br>    Defendants. | )<br>)<br>) |

## MEMORANDUM OPINION

Proceeding pro se, Virginia inmate Richard Allen Patterson ("Patterson" or "plaintiff") initiated this civil-rights action pursuant to 42 U.S.C. § 1983 and alleged violations of constitutional rights. Following screening, he filed a second amended complaint on May 27, 2020. [Dkt. No. 10]. In the second amended complaint Patterson alleged that while he was detained at the Western Tidewater Regional Jail ("WTRJ") defendants Doris Jacobs and Ernest Bower denied him hearing aids after an audiologist recommended them in January 2020 [Dkt. No. 10 at 6-12], and that defendant Bower failed to protect him while he was in WTRJ's custody, which resulted in an assault by another inmate on March 10, 2019. [Id. at 12-13].[1] On November 24, 2020, the Court granted summary judgment on the first claim [Dkt. Nos. 43, 44] and the matter is before the Court on defendant Bower's motion for summary judgment, with a supporting brief and exhibits [Dkt. Nos. 45, 47], which seeks judgment on plaintiff's claim that Bower failed to protect him while he was in custody at the WTRJ. Patterson has been afforded the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th

---

[1] The amended complaint did not rename William C. Smith as a defendant and Smith was dismissed as a defendant on May 28, 2020. [Dkt. No. 14].

Cir. 1975) and has done so. [Dkt. No. 49]. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the defendant's Motion for Summary Judgment shall be granted.[2]

## I. Facts

Patterson is a federal inmate, convicted and sentenced to a term of imprisonment within the Bureau of Prisons, and was confined at the WTRJ in 2018 with inmate Wesley Hadsell. Patterson agreed to testify against Hadsell regarding a murder that had occurred in Southampton County, Virginia. After he testified, Patterson was concerned for his safety because other inmates at the WTRJ knew he had testified against Hadsell. On November 13, 2018, Patterson used WTRJ's tablet messaging system to send defendant Ernest Bower ("Bower"), the Deputy Superintendent at WTRJ, a message about his safety concerns. Patterson was transferred from WTRJ to the Federal Correction Institute in Petersburg, Virginia ("FCI Petersburg") in December 2018 to begin serving his federal sentence. [Dkt. Nos. 10 at 7; 47-4 at 41; 47-6 at 8].

On January 29, 2019, Patterson was transferred from the FCI Petersburg back to the WTRJ under the Interstate Agreement on Detainers ("IAD"). Patterson had criminal charges and

---

[2] Patterson filed a separate § 1983 action against Jacobs and Bower on July 4, 2020 referencing this matter and asserted he believed that Jacobs and Bower were retaliating against him for filing the present action, which the Court dismissed without prejudice on Patterson's motion stating "the jail had rectified the matters raised in the complaint." Patterson v. Jacobs, et al., 1:20cv798 (E.D. Va. Jan. 8, 2021), [Dkt. Nos. 1 at 4; 7]. Patterson has voiced concerns about retaliation in letters he has filed in the present proceedings. Since he raised a retaliation claim in a separate lawsuit that was dismissed without prejudice, Patterson can pursue that claim by refiling his claim. Likewise, complaints about medical care unrelated to the hearing aid claim are not a matter that Patterson can raise in this matter. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (in context of prisoner lawsuits against governmental actors, "[u]nrelated claims against different defendants belong in different suits." ) (citing Fed. R. Civ. P 18); see also Owens v. Godinez, 860 F.3d 434, 436 (7th Cir. 2017) (district courts should not allow inmates "to flout the rules for joining claims and defendants") (citing Fed. R. Civ. P. 18, 20); Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012) ("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot."). To the extent any of these matters are considered "raised" in this action they are dismissed without prejudice under Rules 18 and 20.

probation violations pending in the Suffolk Circuit Court and he had requested that he be returned to state custody under the IAD in order to resolve those charges. [Dkt. Nos. 47-1 at 1; 47-2]. After being processed at the WTRJ, Patterson alleges he met with Bower and told Bower about his safety concerns due to his testimony against Hadsell. Bower advised Patterson that "Hadsell is no longer at this facility, so there should be no problems." [Dkt. No. 10 at 7].

Patterson was initially assigned to "Booking," by WTRJ Officer Brandon Holden, and then transferred by WTRJ Officer Miranda Cilento to Unit D-2 later that same day. [Dkt. No. 47-1 at 1].[3] On January 30, 2019, Patterson was moved from Unit D-2 to Unit E-5 by WTRJ Officer Brenda Holmes and Patterson was moved again on January 31, 2019 from Unit E-2 to Unit B-5 by WTRJ Officer Zella Everett. [Id.].

On February 4, 2019, Patterson messaged Bower stating he had concerns for his safety because the other inmates in Unit B-5 knew he was a "snitch." [Id. at 8]. Patterson asked about Unit E8 (protective custody) and if it was an open dorm. Bower replied that Patterson "would remain in B5 at this time." [Id.]. On February 13, 2019, Patterson sent Bower an Inmate Correspondence Form ("ICF") asking that inmate Gary Revis, who had been removed from Unit B-5 that day and transferred to Unit A-2, not be returned to Unit B-5 because Patterson was "assisting ATF" in an investigation against Revis. [Dkt. No. 47-4 at 56]. Patterson filed a

---

[3] Defendant Bower has submitted jail records establishing the dates Patterson was assigned to and transferred from different housing assignments while he was confined at the WTRJ, the WTRJ officers who made the housing assignments, enemies lists, and various other documents that Patterson has not contested in his response. See Wiley v. United States, 20 F.3d 222, 226 (6th Cir. 1994) ("If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived"); see also BGHA, LLC v. City of Universal City, Tex., 340 F.3d 295, 299 (5th Cir. 2003) (party waived hearsay objection at summary judgment stage by failing to object to affidavit).

3

statement regarding Revis on February 22, 2019 stating that Revis had made threats against him but stated that he did "not feel that [his] safety was in jeopardy, as [Revis] is listed as an enemy to me and will not return." [Id. at 61] (emphasis in original). Patterson alleges he sent messages regarding Revis's threats to WTRJ's PREA[4] and Classification units on February 17 and 21, 2019. [Dkt. No. 10 at 8, 9]. Revis was added to Patterson's enemies list on February 16, 2019. [Dkt. No. 47-6 at 1].

On February 23, 2019, an Incident Report stated that Patterson alleged he had been punched by an unnamed inmate in Unit B-5 and asked to be transferred to Unit E-8. [Dkt. Nos. 47-4 at 58-59]. Even though Patterson refused to name the inmate, it is standard procedure at WTRJ to transfer an inmate after the inmate has been involved in a fight to ensure the inmate's safety. [Dkt. No. 1 at 3]. Patterson was moved from Unit B-5 to Unit D-2 by WTRJ Officer Holmes on February 23, 2019. Patterson alleges that soon after his transfer, the inmates in Unit D-2 learned he was a snitch and an inmate from the adjoining cellblock, Unit D-1, Revis (who Patterson alleges is a member of the Aryan Brotherhood), began sending Patterson threatening notes that also threatened Patterson's wife and family.

On February 23, 2019, Patterson requested "to go to PC," Unit E-8, because of his safety concerns due to the assistance he had provided to federal authorities in the prosecution of two inmates and the assault by the unnamed inmate that he alleged had occurred that day.[5] [Dkt.

---

[4] PREA is an acronym that refers to the Prison Rape Elimination Act. The goal of PREA is to eradicate prisoner rape in all types of correctional facilities in this country. Bureau of Prisons, Rape Elimination Act (PREA), https://bja.ojp.gov/program/prison-rape-elimination-act-prea/overview (last viewed Feb. 26, 2021).

[5] Patterson alleges in his second amended complaint that the transfer occurred between February 8 and 15, 2019, but he has neither contested the transfer date in WTRJ's records nor is the date critical to his claim. Indeed, a statement Patterson executed on February 22, 2019 indicates he was still housed in Unit B-5 on February 22, 2019. [Dkt. No. 47-4 at 58].

4

Nos. 47-4 at 59, 47-4 at 38; 10 at 9-10]. Patterson was transferred to Unit E-8 by WTRJ Officer Shinese Thompkins on February 25, 2019. [Dkt. No. 47-6 at 8]. Shane Cottrell was in Unit E8 at that time and had been assigned to Unit E-8 since January 31, 2019. [Id. at 15].

On March 10, 2019, two weeks after Patterson's transfer to Unit E-8, there was a fight between Cottrell and Patterson. Patterson's statement indicated that the fight was due to Cottrell's anger over Patterson being given an extra lunch tray. [Dkt. No. 47-7 at 5]. Both inmates were taken to the medical department and written up for rule violations. Patterson had superficial cuts to his face, as well as a dislocated finger and was transported to the Emergency Room for further treatment. Cottrell was not on Patterson's enemy list at the time of the fight [Dkt. No. 47-6 at 1], and Patterson stated in his second amended complaint that he had no reason to suspect Cottrell would assault him stating that he did not "understand why" Cottrell had "assaulted" him while the "dinner trays [were] being passed out." [Dkt. No. 10 at 11].

WTRJ tracks each inmate's known gang affiliations and each inmate's known enemies. [Dkt. No. 47-1 at 2]. The pertinent record has an "Alert Category" and if an inmate has a known enemy the phrase "Keep A-parts" appears in the Alert Category. Across from the alert are the details regarding the enemy, which includes the name and the date the information was recorded. The records indicate Hadsell was placed on the list on November 13, 2018, the same day Patterson alleges he messaged Bower about his concerns with Hadsell and Patterson's attorney contacted WTRJ by letter. Revis was placed on Patterson's enemies list on February 16, 2019, the same day Patterson filed a statement that alleged Revis had made threats against him and his family and he asked that Revis be placed on his enemies list. Cottrell was placed on Patterson's enemies list on March 11, 2019 by WTRJ, the day after the fight and four days before Patterson asked that Cottrell be placed on his enemies list. [Dkt. Nos. 47-4 at 52, 62; 47-6 at 1, 25]. In his

5

request that Cottrell be placed on his enemies list, Patterson stated that Cottrell had vowed to retaliate against Patterson because he had been found guilty of the assault and sentenced to thirty days in Unit A-4, but Patterson made no mention of the Aryan Brotherhood. [Dkt. No. 47-4 at 54]. Patterson stated the assault was "unprovoked" in a March 13, 2019 ICF in which he asked that Cottrell be prosecuted for the assault. [Id. at 52]. Five days after the fight, on March 15, 2019, Patterson filed an ICF reiterating the assault was "completely unprovoked," and did not mention the Aryan Brotherhood. [Id. at 55].

In WTRJ records, gang affiliation is one of the alerts that appears in the "Alert Category" in an inmate's digital record. The text of the actual alert is "GANG MEMBER." [Dkt. No. 47-6 at 2]. Cottrell's record has an alert indicating that he is a gang member. Under the "Details" heading, Cottrell's record indicates the gang is the Aryan Brotherhood and that the alert was entered into the system on January 22, 2019. Hadsell and Revis each had several "alerts" in their records but none of their alerts indicated either was a gang member. [Id. at 2-4].[6]

Patterson did not mention the Aryan Brotherhood in his original complaint or in his first amended complaint. [Dkt. Nos. 1 and 5].[7] Patterson mentioned the Aryan Brotherhood twice in his second amended complaint. The first time was in reference to Revis stating that Revis was "associated with the Aryan Brotherhood, the same one as Wesley Hadsell." [Dkt. No. 10 at 8-

---

[6] "Alerts" also include such things as diet restrictions; medical concerns (lower bunk assignment, seizures); and various other administrative notes (number of officers needed for escort, restraints necessary, detainers on file). [Dkt. No. 47-6 at 1-6].

[7] In his response, Patterson states that an online search will establish that Hadsell's gang affiliation was part of the media coverage surrounding Hadsell's trial, that Hadsell had gang tattoos, and that Hadsell bragged to Patterson about his gang affiliation when the two were housed together in 2018. [Dkt. No. 49 at 6]. Such information, even if provided by Patterson, would be hearsay and not admissible in opposition to a motion for summary judgment. Hearsay "is neither admissible at trial nor supportive of an opposition to a motion for summary judgment." Greensboro Professional Firefighters Ass'n v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995); see, infra p. 11. Further, the hearsay is irrelevant to what Bower knew.

9].[8] The second time, Patterson alleges he sent a message to Classification on February 21, 2019 in which he stated "Gary Revis (whom is in D-1, next door to me in D-2) found out that I am testifying against [one of his fellow Aryan Brotherhood] as an informant." [Id. at 11] (brackets in original). Patterson's use of brackets, however, indicates that the information in the brackets[9] was not part of the alleged message sent to Classification on February 21, 2019. While Patterson mentions the Aryan Brotherhood in the second amended complaint twice, he never alleges that he ever specifically told Bower, or anyone else at WTRJ, that he had concerns about the Aryan Brotherhood — which is consistent with Bower's affidavit.

Bower avers that he did not tell any inmates that Patterson was an informant, did not encourage any assaults against him, never threatened Patterson, never retaliated against Patterson, did not deliberately place him in danger, and did not know that Cottrell posed any danger to Patterson because prior to the fight on March 10, 2019, because Cottrell was not on Patterson's enemies list. [Dkt. No. 47-1 at 2]. Specifically, at the time of the fight on March 10, 2019, Bower avers that

> it was not known or suspected that Shane Cottrell posed a danger to Patterson. Patterson had made no mention of any threats or perceived threats by Shane Cottrell or any known gang, including the Aryan Brotherhood. Shane Cottrell and

---

[8] Patterson also states he "previously provided the Court with the dates and content of [his] tablet messages, where [he] pleaded for Col. Bower to help protect me." [Dkt. No. 49 at 4]. The original complaint does not include any list or mention tablet messages. [Dkt. No. 1]. In his first amended complaint, Patterson did provide a list of the dates and contents of tablet messages he alleges he sent defendant Bower. [Dkt. No. 5 at 11-13]. The list is entitled "Timeline of all messages sent by Patterson to various Department heads (on tablet as there are no paper requests any longer), All messages and requests are regarding the injury of 3/10/19." [Id. at 11]. Consistent with the title, the 37 entries on the list only concern the hearing aid claim that was dismissed on November 24, 2020. [Dkt. Nos. 43, 44]. The Court has also reviewed Patterson's various letters and other pleadings filed in this matter and found no list of tablet messages in which he raised the issue of his security.

[9] Square brackets in a quotation denote information that has been added to the original quotation. See APA Style, Style and Grammar Guidelines, In Text Citations, Quotations, Changes to Quotations, https://apastyle.apa.org/ (last viewed March 11, 2021).

7

> Richard Patterson had been housed together in Unit E-8 without incident for two weeks before the March 10, 2019 incident.
>
> ****
>
> Prior to the March 10, 2019 incident, Richard Patterson had not notified me or WTRJ staff of any concerns that he had with Shane Cottrell or the Aryan Brotherhood. Prior to March 10, 2019, Patterson had identified Wesley Hadsell and Gary Revis as enemies. Wesley Hadsell and Gary Revis were not known or suspected members of the Aryan Brotherhood. Additionally, Wesley Hadsell and Gary Revis were never housed with Richard Patterson.

[Id. at 4].

Bower further avers that he is not involved in the transfer or classification of inmates and that an inmate's request for a transfer (such as Patterson's February 23, 2019 request to be transferred to Unit E-8) would be referred to the appropriate Watch Commander and the ultimate decision would be made by Classification. [Id. at 3]. Although Patterson indicated in his February 16, 2019 statement that Revis had made threats against him, "Patterson made no mention of any threats or perceived threats by anyone other than Gary Revis or any known gang, including the Aryan Brotherhood." [Id.].

In his response, Patterson states that Bower is wrong to state that he was not housed with Hadsell and Revis while at WTRJ. In context, Bower's statement about with whom Patterson was housed with while at WTRJ refers to the time period after Hadsell and Revis were known enemies of Patterson. Further, with respect to Hadsell, Patterson refers to his prior incarceration at WTRJ in 2018 and not the incarceration that began on January 29, 2019.[10] Even if true

---

[10] Patterson alleges he and Hadsell were housed together in Unit E-1. [Dkt. No. 49 at 6]. The WTRJ records indicate that Patterson was not housed in Unit E-1 after his transfer back to WTRJ on January 29, 2019. [Dkt. No. 47-1 at 1-2].

8

however, neither Hadsell nor Revis harmed Patterson when they were allegedly housed together.[11]

## II. Standard of Review

It is well settled that a motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Where, as in this case, the nonmoving party has the burden of proof at trial, the moving party need only demonstrate that there is a lack of evidence to support the non-movant's claim. See Celotex, 477 U.S. at 323-25. In response to such a showing, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. See id. at 324; Anderson, 477 U.S. at 248. The party who bears the burden of proving a particular element of a claim must "designate 'specific facts showing there is

---

[11] Patterson was housed in Unit E-1 in May through July 2018. [Dkt. No. 47-6 at 7]. After his return to WTRJ in January 2019, Revis was housed in Unit D-1, which was next to Unit D-2 where Patterson was housed from February 23 through 25, 2019. [Dkt. No. 47-1 at 2]. As Patterson admits, Unit D-2 was a "single occupancy, isolated cell." [Dkt. No. 10 at 8]. While Revis may or may not have been housed with Patterson in Unit B-5 prior to Patterson's transfer to Unit D-2, the only harm that allegedly befell Patterson in Unit B-5 was allegedly being punched by an unnamed inmate, who Patterson described as "a large black male." [Dkt. No. 47-4 at 58]. Revis is not black. [Id. at 4].

9

a genuine issue for trial'" with respect to that element. Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

In reviewing the record on summary judgment, the Court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

The non-moving party, however, must show more than some metaphysical doubt as to the material facts. "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial.'" Hughes v. Bedsole, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting Anderson, 477 U.S. at 256). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. See Anderson, 477 U.S. at 249-50. There must be evidence on which the jury could reasonably find for the non-moving party. Id. at 252. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the opposing party is entitled to a verdict.

When a defendant moves for summary judgment on ground that plaintiff lacks evidence of essential element of his claim, plaintiff is required, if he wants to ward off grant of motion, to present evidence of evidentiary quality (either admissible documents or attested testimony, such as that found in depositions or in affidavits) demonstrating existence of genuine issue of material

fact; evidence need not be in admissible form, but it must be admissible in content, in sense that change in form but not in content, would make evidence admissible at trial. See Celotex, 477 U.S. at 324. Hearsay "is neither admissible at trial nor supportive of an opposition to a motion for summary judgment." Greensboro Professional Firefighters Ass'n v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995). Such "second-hand" information learned from others fails to satisfy a plaintiff's burden "to survive a motion for summary judgment." Monk v. Potter, 723 F. Supp. 2d 860, 875, 878 (E.D. Va. 2010) (citing Greensboro, 64 F.3d at 967; Riggs v. Airtran Airways, Inc., 497 F.3d 1108, 1121 (10th Cir. 2007) (noting that statements conveyed to plaintiff were "second-hand" and inadmissible hearsay in opposition to summary judgment); Lemmons v. Georgetown Univ. Hosp., 431 F. Supp. 2d 76, 89-90 (D.D.C. 2006) (purported events related by plaintiff in her own deposition were based on second-hand information rather than personal knowledge and were therefore inadmissible hearsay for summary judgment purposes); Fed. R. Civ. P. 56(e) (supporting or opposing summary judgment affidavits must be based on "personal knowledge")); see also Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985) (finding plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places ... It's all around us" was conclusory and therefore insufficient to satisfy the requirements of Fed. R. Civ. P. 56(e)).

### III. Analysis

Defendant Bower has moved for entry of summary judgment in his favor on Patterson's second claim that Bower failed to protect him while in WTRJ's custody, which resulted in an assault by another inmate on March 10, 2019. Bower contends he is not involved in the housing

assignments of inmates at WTRJ and had no such involvement in Patterson's assignment to Unit E-8 where the fight occurred. Bower further argues that neither he nor WTRJ had any knowledge prior to March 10, 2019 that Cottrell posed any danger to Patterson and that Patterson had made no mention of any threats or perceived threats by Cottrell or any known gang, including the Aryan Brotherhood, prior to March 10, 2019. In his response, Patterson provides no evidence that Bower was responsible for assigning him to Unit E-8 and he also fails to establish that prior to March 10, 2019 he advised either Bower or WTRJ that his safety was at risk from members of the Aryan Brotherhood.

*A. Failure to Protect*

Patterson alleges that Bower failed to protect him from harm while he was in custody at WTRJ, relying primarily on the March 10, 2019 assault by inmate Cottrell. To establish that the risk of exposure to future harm violates the Eighth Amendment, the risk must be "sure or very likely to cause serious illness and needless suffering" and give rise to "sufficiently imminent dangers." Helling v. McKinney, 509 U.S. 25, 33, 34-35 (1993). "[T]here must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" Baze v. Rees, 553 U.S. 35, 50 (2008) (quoting Farmer, 511 U.S. at 842, 846, and 847 n.9)).

A prison official is not liable if he or she "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844; see also Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997) (finding that a prison official was not liable, because he did not actually draw the inference that the inmate was

12

exposed to a substantial risk of serious harm). As Farmer explained, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." 511 U.S. at 838.

Whether a defendant was subjectively aware of the risk of harm can be shown either through direct evidence or circumstantial evidence of actual knowledge.

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious.

Farmer, 511 U.S. at 842 (citations omitted). "In other words, although the obviousness of a particular injury is not conclusive of an official's awareness of the injury, an injury might be so obvious that the factfinder could conclude that the guard did know of it because he could not have failed to know of it." Brice, 58 F.3d at 105 (citations omitted).

Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015).

Here, the undisputed facts establish that each and every time Patterson expressed concern about his safety or that WTRJ knew of a risk to his safety, Patterson was moved to a different housing unit to protect him from that potential threat. On his return to WTRJ on January 29, 2019, Patterson expressed concern about Hadsell and was informed that Hadsell was no longer at the facility. Hadsell was already on Patterson's enemies list. On February 13, 2019, Patterson asked that Revis, who had been removed from Unit B-5, not be returned to Unit B-5 because Patterson was "assisting ATF" on a case against Revis. [Dkt. No. 47-4 at 56]. On February 22, 2019, Patterson indicated that Revis had made threats against him but stated that he did "not feel that [his] safety was in jeopardy, as [Revis] is listed as an enemy to me and will not return." [Id.

13

at 61] (emphasis in original). Revis had been placed on Patterson's enemies list on February 16, 2019.

On February 23, 2019, Patterson asked to be transferred to Unit E-8 following the alleged assault by an unnamed inmate and was transferred to Unit D-2 that day and transferred to Unit E-8 on February 26, 2019. Patterson was in Unit E-8 for two weeks prior to his fight with Cottrell and never indicated to Bower or WTRJ that Cottrell was a threat to him.

A prison official "is deliberately indifferent to a substantial risk of harm to a [prisoner] when that [official] 'knows of and disregards' the risk." Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (quoting Farmer, 511 U.S. at 837). The undisputed facts do not establish that WTRJ either knew of or disregarded a risk to Patterson's well-being when it assigned Patterson to Unit E-8, or that Patterson was assigned there in disregard of an obvious risk. To the contrary, the facts establish that WTRJ took "reasonable measures to guarantee" Patterson's safety and to protect him from other inmates. Makdessi, 789 F.3d at 132. Indeed, Patterson himself stated "At the time of the assault, [he] did not understand why [Cottrell] had assaulted [him] during dinner trays being passed out." [Dkt. No. 10 at 11].

Moreover, Patterson has failed to establish that Bower had any involvement in the decisions regarding where Patterson was housed during his time at WTRJ and specifically with Patterson's assignment to Unit E-8, which was at Patterson's own request. In other words, even if Cottrell had been a known risk or obvious risk to Patterson, Bower did not act in a deliberately indifferent manner because he was not involved in the decision. See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009) (in addition to alleging a defendant's deliberate indifference to his medical needs, plaintiff must also prove causation between that indifference

14

and his injuries); Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) ("constitutional torts ... require a demonstration of both but-for and proximate causation" and "intervening acts of other[s]" may "insulate" a defendant from liability). Prisons are "inherently dangerous places," United States v. Tokash, 282 F.3d 962, 970 (7th Cir. 2002), where inmate on inmate attacks are inevitable and impossible to eliminate. See Shrader v. White, 761 F.2d 975, 980 (4th Cir. 1985); Taylor v. Freeman, 34 F.3d 266, 273 n. 6 (4th Cir. 1994). While the incident was unfortunate, it does not implicate the Eighth Amendment.

Defendant Bower also asserts that he is entitled to qualified immunity because his actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." [Dkt. No. 47 at 8] (citing Harlow v. Fitzgerald, 457 U.S. 800 (1982)). Because summary judgment is granted on other grounds, it is unnecessary to reach this issue.

## V. Conclusion

For the foregoing reasons, defendant's motion for summary judgment is granted. An appropriate order will issue alongside this memorandum opinion.

Entered this 11th day of March 2021.

Alexandria, Virginia

Anthony J. Trenga
United States District Judge